## THE STATE v. DONALD W. ROSS, Appellant.

Division Two, January 6, 1926.

1. **INDICTMENT: Embezzlement: Statutory Offense.** Embezzlement is purely a statutory crime, and in order to charge the offense an indictment must substantially follow the language of the statute, or set forth the facts which bring it within the terms of the statute; and the indictment in this case, tested by that rule, is sufficient.

2. **————: ————: Trust Statute: Public Officer: By Virtue of Trust.** An indictment charging a public officer with the conversion of the funds of an insolvent bank of which he is in charge is not defective because it does not allege that its money came into his possession "by virtue of the trust imposed in him." The statute (Sec. 3334, R. S. 1919), in so far as it relates to public moneys, condemns the conversion in "any manner whatever" of public moneys which may have come into the hands of an official of the State by virtue of his official position.

3. **————: ————: ————: ————: As Trustee: Surplusage.** Where the indictment, after setting forth the facts which show the character in which defendant, as an official of the State, received the money of an insolvent bank of which he was in charge and converted it to his own use, the use of the words "as trustee" as descriptive of his character in receiving it is a mere legal conclusion of the pleader and should be regarded as mere surplusage. If the facts pleaded bring him within the terms of the statute and show in what character he received the money, the use of wrongful words as descriptive of that character does not vitiate the indictment.

4. **EMBEZZLEMENT: Former Conviction: Different Moneys.** Where defendant is being tried for the conversion of $3342.47 on November 24th, evidence that on a previous day of the same term he had been convicted of embezzling $28,250 on November 28th, where there is no offer to show that the $3342.47 was a part of the $28,250, is not admissible on the theory of former conviction.

5. **————: Confidential Communications: Attorney: Personal Acts of Public Official.** To exclude communications between attorney and client on the ground that they were confidential they must in fact have been confidential, and the relation must have existed, and they must have grown out of the relation. Where the Commissioner of Finance had taken charge of an insolvent bank, and placed defendant in charge thereof as his deputy, and had employed a firm of

State v. Ross.

lawyers to collect for the Department of Finance moneys due the bank, and they had collected and remitted to defendant by check $3342.47, which he deposited in a trust company to his own individual credit and is being tried for the embezzlement of the money, the firm may be said to have been his attorneys in his official capacity, but not in his individual capacity, nor were they consulted by him in matters pertaining to his individual affairs, and one of them is not, on the ground that the relation of attorney and client existed between them and defendant and the knowledge they acquired pertained to that confidential relation, disqualified to testify regarding the collection, the check signed by them and made payable to defendant, or the letter accompanying the remittance. The lawyers were in no sense personal attorneys for defendant, but the collection and remittance pertained to their dealings with him relating to a public matter. The Commissioner of Finance and the bank might have invoked the rule against such attorneys testifying, but defendant cannot invoke it as a protection against his wrongful private acts.

6. ———: ———: **Violation of Law.** The rule that confidential communications between attorney and client are not admissible in evidence does not extend to communications made in contemplation of a violation of the criminal laws. A person cannot seek legal advice about how to commit a crime, and on a trial for such crime close the mouth of his attorney on the ground that the advice was confidential.

7. ———: **Money of Insolvent Bank: No Proof of Corporation.** The State, having alleged in the indictment charging embezzlement that the bank, of which defendant was in charge as Deputy Finance Commissioner, was incorporated, should prove that the bank was a corporation, in order to show that its money embezzled was legally in the custody of defendant, since a banking corporation is one of the institutions of which the Commissioner of Finance is authorized by statute to take possession under named conditions. But where the evidence that the Commissioner took charge of the bank and its assets was admitted without objection, and all parties assumed that it was an institution of which the statute authorized him to take possession and that the proof supported the allegations of the indictment in this respect, defendant is not in a position on appeal to urge that there was no proof that the bank was incorporated as alleged.

8. ———: ———: ———: **Instruction.** Nor was an instruction erroneous which required the jury to find that the bank was incorporated; for although it required the jury to find a fact of which there was no evidence, the fact was assumed throughout the trial, and the instruction required the State to prove an unnecessary fact.

State v. Ross.

9. ——: ——: ——: **Variance.** Although the indictment alleged that the bank was a corporation, and there was no proof that it was incorporated, there was no variance where it was assumed throughout the trial that it was incorporated, and no objection to the admission of evidence was made on the score that the Commissioner of Finance had no power to take charge of its assets without such proof, and it is not claimed that the money, which it is charged defendant as Deputy Commissioner embezzled, belonged to a different institution from the one that the indictment alleged was the owner, but the proof is that it belonged to the bank therein named. In such case the only difference between the pleading and proof is not in the identity of the institution, but in the language describing it. The corporate character of the bank, so far as the crime of embezzlement is concerned, is immaterial; and under the statute (Sec. 3907, R. S. 1919) a variance in the description of the individual owner of money is not material unless the trial judge so finds.

10. ——: **Owner of Money Embezzled: Insolvent Bank.** The assets which the Commissioner of Finance takes into his possession in taking charge of an insolvent bank do not belong to the State, nor to the Finance Department, nor to the depositors or creditors of the bank until distributed to them, but to the bank, held by an arm of the State for distribution among persons who may thereafter establish claim to the money realized.

11. ——: **Check or Money: Variance.** If defendant has authority to collect a check and does so, and converts the money to his own use, he embezzles the money and not the check; and he converts the money when he has the check placed to his individual name in a book.

Criminal Law, 16 C. J., Section 769, p. 426, n. 25; p. 427, n. 38 New; 17 C. J., Section 3330, p. 55, n. 99; Section 3729, p. 359, n. 64; p. 360, n. 65. Embezzlement, 20 C. J., Section 2, p. 409, n. 2; Section 18, p. 431, n. 42, 46 New; Section 55, p. 458, n. 62, 63; Section 61, p. 466, n. 8 New; Section 66, p. 470, n. 41; Section 70, p. 476, n. 78; Section 72, p. 478, n. 91; Section 73, p. 478, n. 96; Section 75, p. 480, n. 17. Indictment and Information, 31 C. J., Section 192, p. 671, n. 38; Section 304, p. 748, n. 31; Section 306, p. 749, n. 45. Witnesses, 40 Cyc., p. 2363, n. 2; p. 2370, n. 36; p. 2371, n. 53; p. 2373, n. 62, 63.

Appeal from St. Louis City Circuit Court.—*Hon. John W. Calhoun*, Judge.

AFFIRMED.

*Bass & Bass* for appellant; *Cosgrove & Doyle* of counsel.

(1) The indictment averred and charges that the appellant received and took into his possession supervision, care and control, as trustee for the Night & Day Bank, under and by virtue of his office and position as Special Deputy Commissioner of Finance, $3,342.47 lawful money, the money and property of the said Night & Day Bank, and that the money so received and had in his possession and under his supervision and control was by him embezzled and converted to his own use. This court will take judicial notice of general laws and that an officer appointed by virtue of the laws, and having possession of a bank for the purpose of liquidation under said laws, does not thereby become a trustee for and on behalf of the bank in his hands. State v. White, 263 S. W. 192; State v. Higgins, 124 Mo. 649; State ex rel. Clark v. Gates, 67 Mo. 142; Secs. 11673 to 11726, R. S. 1919, Laws 1921, p. 393, et seq. Appellant committed no offense as a trustee. Sec. 3334, R. S. 1919; State v. Hall, 126 Mo. 585; State v. Cleveland, 80 Mo. 108; State v. Castleton, 255 Mo. 201; Hammel v. State, 5 Mo. 564; People v. Shearer, 143 Cal. 66; State v. Hubbard, 58 Kan. 797. (2) The indictment should have alleged in the statutory language that the defendant did then and there receive and take into his possession and have in his care and control as trustee the money in question and that it came to him "by virtue of the trust reposed in him." The foregoing words are necessary in an indictment for embezzlement under Sec. 3334, R. S. 1919. No indictment for embezzlement under said section is good without such allegation. Especially so when the charge is against an alleged trustee. State v. Harmon, 106 Mo. 655; Clark's Crim. Law, p. 274; Tipton v. State, 53 Fla. 69; 2 Bishop Criminal Law (Ed. 1923) sec. 352; State v. Zingher, 302 Mo. 650. (3) The court committed an error in not permitting the defendant to introduce in evidence the record of a former trial and conviction. It was admissible for the purpose of determining the fact of the identity of the offense of which appellant had been convicted with the one on trial. (4) The court committed error in permitting Clarence T. Case to

312 Mo. Sup.—33.

testify in relation to the check in question. The evidence shows beyond controversy that Case was the attorney for the appellant at the time the check was given to Ross. The statute made Case as an attorney incompetent. Sec. 5418, R. S. 1919. (5) The defendant's motion in the nature of a demurrer should have been given. There was a total failure of proof in the following particulars: (a) The State failed to prove in any manner or form that the Night & Day Bank was a duly incorporated banking institution, organized and existing under and by virtue of the laws of the State as alleged. This must be proved as alleged. It was material matter. Kelley's Crim. Law (3 Ed.) sec. 680. (b) The State failed to prove that the appellant was a trustee, either in fact or in law, or that he received and took into his possession and had under his care and control as trustee the money alleged to have been embezzled, or that he embezzled said money as a trustee for and on behalf of the Night & Day Bank; or that there was any fiduciary relation between appellant and the Night & Day Bank, or that there was any money that came to appellant by virtue of the trust reposed in him by the Night & Day Bank. State v. Zingher, 302 Mo. 659; Kelley's Criminal Law (3 Ed.) sec. 241; State v. Brown, 171 Mo. 480; State v. Moreaux, 254 Mo. 398; Simpson v. People, 47 Colo. 612, 108 Pac. 169; 15 Cyc. 494; State v. Castleton, 255 Mo. 201; Secs. 11673 to 11726, R. S. 1919, and Amendments, Laws 1921. (c) There was no evidence to support the allegation that the money alleged to have been embezzled was the money of the Night & Day Bank. The money was *in custodia legis,* in the hands of an officer of the law, and who held it subject to the orders of the court. Secs. 11713, 11718, 11719, 11723, R. S. 1919. (d) The evidence failed to show that the appellant received and took into his possession lawful money, but to the contrary the evidence shows that he received and embezzled, if he embezzled anything, a check payable "to the order of D. W. Ross, Examiner in Charge." State v. Mispagel, 207 Mo. 557; State v. Peck, 299 Mo. 454; State v.

Fisher, 249 S. W. 46; State v. Castleton, 255 Mo. 201; State v. Dodson, 72 Mo. 283; State v. Schilb, 159 Mo. 130.

*Robert W. Otto,* Attorney-General, and *W. F. Frank,* Assistant Attorney-General, for respondent.

(1) The information in this case properly charges the crime of embezzlement. Sec. 3334, R. S. 1919; State v. Clarkson, 59 Mo. 149; State v. Larew, 191 Mo. 192; State v. Moreaux, 254 Mo. 398. (2) The evidence sufficiently supports the charge. State v. Laughlin, 180 Mo. 342; State v. McCawley, 180 S. W. 871; State v. Martin, 230 Mo. 680; State v. Meininger, 268 S. W. 79. (3) The court did not err in overruling appellant's plea of former conviction because: (a) The plea was wholly insufficient in that it did not allege that the judgment was rendered and sentence pronounced on the plea in the former trial. Sherwood's Criminal Law, 764; Coleman v. Tenn., 97 U. S. 530. (b) Because the record and proceedings of the former trial clearly show that the offense for which defendant was convicted is not identical with that charged in the information in the case at bar. To avail defendant the charges must be identical. Kelley's Criminal Law (3 Ed.) sec. 235; 12 Cyc. 366; State v. Wister, 62 Mo. 592; State v. Voolenweider, 94 Mo. App. 158; State v. Moore, 66 Mo. 372; State v. Needham, 194 Mo. App. 204. (c) While defendant objected to the action of the court in rejecting the record of the former trial when offered there is no objection or exception to the action of the court in overruling the plea of former conviction. (4) It was not error to admit the evidence of witnesses Case and Millspaugh, and transactions between these witnesses and defendant were not privileged. State v. McChesney, 16 Mo. App. 268.

WHITE, J.—The appeal is from a judgment in the Circuit Court of the City of St. Louis, upon conviction of embezzlement. It is charged that the defendant, while acting as Deputy Commissioner of Finance of the State of

Missouri, in charge of the assets of the Night & Day Bank in the city of St. Louis, November 24, 1922, embezzled $3,342.47, which came into his hands.

The evidence shows that John C. Hughes was appointed Bank Commissioner of the State of Missouri, in 1921, and later, when the office of Commissioner of Finance was created, he was appointed to that position in July, 1922. As Commissioner of Finance, Hughes took charge of the Night & Day Bank of St. Louis in January, 1922. In May, 1922, he appointed defendant Ross Special Deputy Finance Commissioner, and placed him in charge of the assets of that bank and Ross remained so in charge continuously thereafter until the time of the alleged offense.

Hughes was succeeded as Commissioner of Finance by Frank C. Millspaugh, who retained Ross as Deputy Commissioner.

The law firm of Case & Miller, of St. Louis, was employed by Hughes to act for the commissioner in collecting money due the Night & Day Bank, and served in that capacity while Ross was in charge of the bank. According to the testimony of Clarence T. Case, a member of the firm of Case & Miller, they sent to Ross a check for $3,342.-47. This check, payable to "D. W. Ross, Examiner in Charge," was for the total proceeds of a large number of collections which those attorneys had made. November 24th, Ross cashed the checks and deposited the proceeds in the Liberty Central Trust Company. His deposit slip, in his own handwriting, and his account with the Liberty Central Trust Company, showed the deposit to his own individual account. He carried two accounts in that institution, one a personal account and one as "Special Deputy Commissioner of Finance in Charge of the Night & Day Bank." The proceeds of the check never got into that official account.

After Millspaugh succeeded Hughes he found this deposit and asked Ross why he placed the check in his own personal account. Ross made no satisfactory explanation. At that time he was short four or five thousand dollars,

but refused to admit that he was short the exact amount of that check.

This last statement of Millspaugh was stricken out on motion of defendant's counsel, because not responsive to the question asked witness, but a voluntary statement.

Several witnesses, some of whom worked with Ross and knew his signature well, identified his handwriting in his indorsement of the check and his name on the deposit slip.

Defendant offered no evidence upon the merits of the case. The jury, December 22, 1923, found him guilty of embezzlement as charged, and assessed his punishment at imprisonment in the penitentiary for five years.

I.   The indictment contained two counts. Defendant was found guilty on the second count. He filed a motion to quash the indictment and assigns error to the action of the trial court in overruling the demurrer. The offense charged is defined by Section 3334, Revised Statutes 1919, and appellant claims that the indictment fails to charge an offense under that section, or any other section, because it does not allege that he converted the money which came into his possession "by virtue of the trust reposed in him," as the language of the statute describes the offense. Embezzlement is purely a statutory crime, and in order to charge the offense an indictment must substantially follow the language of the statute, or set forth the facts which bring it within the terms of the statute. [State v. McWilliams, 267 Mo. 449; State v. Moreaux, 254 Mo. l. c. 405; State v. Harmon, 106 Mo. l. c. 655.]

Section 3334 reads:

"If any officer, appointed or elected by virtue of the Constitution of this State, or any law thereof, or any mortgagee, trustee, executor, etc., . . .  shall convert to his own use, in any manner whatever, or shall use by way of investment in any kind of property or merchandise, or shall make way with or secrete any portion of the public moneys, or any moneys that may have come to him . . .  by virtue of . . .  his office or official position,

or by virtue of the trust reposed in him . . . such officer . . . shall, upon conviction, be punished for stealing property of the kind or the value of the article so embezzled, converted, taken or secreted."

The statute was intended to apply to public officers, and to persons holding other positions of trust. It condomns the conversion in "any manner whatever" of the public moneys that may have come to such person by virtue of his official position, or moneys which may have come to him by virtue of any trust reposed in him. The disjunctive "*or*" makes it apply to varying facts. It includes embezzlement by administrators, and other technical trustees; the clause referring to "the trust reposed in him" applies especially to those persons. The language which the appellant claims was left out was unnecessary in an indictment of a public officer, and would be superfluous if it were in the indictment.

The indictment charged that November 24th, Ross was the duly appointed and acting Special Deputy Commissioner of Finance, in charge of the affairs of the Night & Day Bank, and while acting as such "was then and there authorized to take, collect, receive, and have under his supervision, care and control, money and property, the property of the said Night & Day Bank of the City of St. Louis, Missouri, a corporation as aforesaid; that the said Donald W. Ross, as said Acting Agent and said Special Deputy Commissioner of Finance of the State of Missouri, as aforesaid, did then and there receive and take into his possession and have under his supervision, care and control as *trustee* for and on behalf of the said Night & Day Bank of the City of St. Louis, Missouri, a banking corporation as aforesaid, under and by virtue of his office and position as said Acting Agent and Special Deputy Commissioner of Finance, as aforesaid, $3,342.47," and November 24, 1922, converted same to his own use.

Whatever trust was reposed in defendant is implied in this description of his official character. While that allegation is not in the exact language of the statute, in describing the offense it sets forth all the facts to which

State v. Ross.

the general terms of the statute apply.  It was said in the case of State v. Larew, 191 Mo. l. c. 198: "It will thus be seen that the pleader has applied the statute to the concrete facts in the case and fully advised the defendant of the charge and accusation against him."

It is further claimed that the use of the words "as trustee" in the indictment vitiates the indictment, because if defendant had charge of the money as an official of the State, he was not a trustee and could not have converted as trustee.  The phrase "as trustee" is in the nature of a conclusion by the pleader from the facts stated.  The facts alleged in the indictment show the character in which the defendant received the money and embezzled it.  Any general conclusion by the pleader as to the legal effect of such facts would not control their import.  We had occasion to say in the case of State v. Collins, 297 Mo. l. c. 267, that the instrument set out in the information must be given effect as it reads, and the conclusion of the pleader as to its legal effect was surplusage.  That applies here.  The indictment sets out the facts and the expression "as trustee," the pleader's conclusion, regarding the effect of such facts, is mere surplusage.

II.  Before the trial, December 21, 1923, the defendant filed a plea of former conviction.  This plea set out that Ross was indicted and found guilty at the December term, 1923, of the Circuit Court of the City of St. Louis, on the charge of embezzling on the *28th* day of November,
Former
Conviction.
1922, $28,250.  It is alleged that the offense charged there embraced the same offense described in the indictment in the present case. The record does not show whether at the time the defendant offered any evidence in support of that plea, but it shows that on December 21st the court overruled it and no objection was made.

The defendant then filed a plea of merger in which he alleged that he was indicted, tried and convicted of embezzling $28,250, on the *28th* day of November, 1922, and that it was the same offense with which he was now

charged. At the trial the defendant offered the files in
the other case, it being the same case mentioned in the
plea of former conviction, and the case of State v. Ross,
*ante,* page 490. On objection of the State the evidence
was excluded. The defendant then offered to prove that
Ross was tried on the 4th and 5th days of December, 1923,
in that case, and convicted, and his punishment assessed
at five years' imprisonment in the penitentiary, and the
evidence was excluded.

The offense charged here, the embezzlement of $3,342.-
47, was alleged to have been committed on the *24th* day
of November, 1922. The charge on which he was for-
merly convicted was the conversion of $28,250, on the *28th*
day of November, 1922. A different sum embezzled at a
different time. The appellant did not offer to show that
the sum charged in the present indictment was a part of
the $28,250 charged in the other indictment. There was
nothing to identify the check delivered to the plaintiff by
the attorneys Miller & Case, or the proceeds of the check,
in any way with the money involved in the indictment
described in the other case. Therefore the evidence was
properly excluded.

III. Clarence T. Case, of the firm of Case & Miller,
was introduced as a witness for the State, and testified
regarding the check which was signed by him and made
payable to the defendant. He told of the collection and
the remittance; and identified the check
Confidential
Communications. and the letter accompanying it. The de-
fendant objected and assigns error here
to the action of the court in permitting Case to testify, on
the ground that the knowledge he acquired of the mat-
er was confidential, in that the relation of attorney and
client existed between himself and Case.

Case & Miller were employed by Hughes, Finance
Commissioner, and retained in the position by Millspaugh,
Hughes's successor. Their duty, on behalf of the com-
missioner in charge, was to collect debts due the Night &
Day Bank. They were not in any sense personal at-

torneys for Ross. It may be said that they were attorneys for him in his official capacity, but not in his individual capacity, and the objects for which they were employed were to collect for the Department of Finance the money due the bank in charge of that department. They were not employed by, and owed no duty to, the individual Ross.

In order that communications between attorney and client may be excluded on the ground that they are confidential, they must be in fact confidential. The rule does not extend to the protection of matter communicated unless it is the subject of confidential disclosure. [Standard Oil Co. v. Meyer Bros. Drug Co., 84 Mo. App. 80; Schaaf v. Fries, 77 Mo. App. 359.] Ross gave no confidential information to Case. Case was not consulted by Ross in any matter pertaining to his individual affairs, or in any matter that was personal. The proceeding by which Case & Miller collected and remitted to Ross was a public matter. It was not, in its nature, the private concern of Ross and the attorney. The Court )of Appeals in the case of State v. McChesney, 16 Mo. App. l. c. 268, thus states the principle which applies here:

"The rule exists for the protection of litigants, actual or intending, who find it necessary to make full and confidential revelations to counsel learned in the law, in order to assure ascertainment of their legal rights. It does not clearly appear that the defendant ever pretended to anything of this sort in his interviews with Mitchell. He professed to be talking, not for himself, but for the Brewers' Association. It may be claimed that a party who consults an attorney through an agent is entitled to the same protection against disclosures that would be assured to him if he consulted an attorney in person. But the Brewers' Association here claimed no such protection, and the defendant could not claim it for them."

That is the situation here. Whatever Ross had to say to these attorneys concerning the matter of collections was not on his own behalf, but on behalf of the Finance Department and the Night & Day Bank, and that Department

and the Night & Day Bank are not claiming the protection of confidential communications.

If Ross had consulted these attorneys regarding the proposed use of the money remitted to him, his disclosures could not have received the protection of confidential communications, because the rule does not extend to communications made in contemplation of a violation of the criminal law. [State v. Faulkner, 175 Mo. 1. c. 594; Hamil & Co. v. England, 50 Mo. App. 346; Carney v. United Rys. Co., 226 S. W. 1. c. 312.] A person cannot seek legal advice about how to commit a crime and on a trial refuse to divulge the conversation on the ground that it was confidential.

IV.  Appellant asserts that his demurrer at the close of the State's case should have been sustained because there was no proof that the Night & Day Bank was incorporated as alleged in the indictment.  No **Incorporation.** doubt, having alleged that the Night & Day Bank was incorporated, the State should have proved it in order to show that the money embezzled was legally in the custody of the defendant.  A banking corporation was one of the institutions of whose property the Commissioner of Finance must take possession under Section 11700, Revised Statutes 1919.

The defendant is hardly in position to make that point now because the evidence that the Finance Commissioner took charge of the Night & Day Bank and its assets was offered and admitted without objection, all the parties assuming that it was an institution of which the statute authorized the Finance Commissioner to take charge under certain conditions, *and that the proof supported the allegations of the indictment.*  There was no objection on the ground that the evidence was not admissible until the incorporation of the bank should be proved as alleged, nor that the proof was at variance with the averments.  If such objection had been promptly made, the State would have had an opportunity to supply the omission.

The statute, Section 3334, describes the offense as one where the official shall convert to his own use, etc., ''any moneys that may come to him by virtue of his official position.''

Sections 11700 provides the conditions under which the Finance Commissioner may take charge of the effects of a bank whether it be a private bank or a corporation. And he is authorized under Section 11713 to do such acts and make such expenditures as are necessary to conserve its assets. It was not contended at the trial that the Night & Day Bank of which he took charge was not an institution that came within the terms of those sections, *as alleged.*

In this connection there was an instruction which required the jury to find that the Night & Day Bank was a corporation, and appellant claims error because there was no evidence of such incorporation to authorize that instruction. That instruction required the State to prove more than necessary, undertake an undue burden, and defendant has no right to complain. It was not necessary to make proof as we have seen, because the fact was assumed.

Instruction.

There was no variance or failure of proof in this respect. It is not claimed that the money embezzled belonged to a different institution from the one which the indictment alleged as the owner. Of course, if the State had not proved that the money embezzled was the money of the institution which the indictment averred it to be, there would have been a variance. But the allegation was that the defendant embezzled the money of the Night & Day Bank, and the proof showed it. The only difference between the pleading and the proof of which the defendant complains, is not in the identity of the institution, but in the language describing it. That is, the Night & Day Bank was alleged to possess a corporate character which the proof failed to show, a feature wholly immaterial so far as the crime is concerned—a mere insufficiency in the *descriptio personae,* although the description was sufficient to identify the institution.

Variance.

Under Section 3907, Revised Statutes 1919, such a variance in the description of the individual owner of the money was not material unless the trial judge found it so. [State v. Dworkin, 307 Mo. 497.]

It is further claimed by the appellant that the money in question was not in fact the money of the Night & Day Bank after it got into the custody of the State. Appellant in making that argument, fails to say whose money it was. The assets which the Bank Commissioner took in charge did not belong to the State of Missouri, nor the Finance Department, nor to the depositors and creditors of the bank until it was disbursed to them. It belonged to the bank. The bank was not dissolved. Its corporate entity remained and the property which it had possessed was held in trust by an arm of the State for the purpose of distribution to persons who might *thereafter* establish claims to it, so that it was in fact the money of the Night & Day Bank.

Owner of Money.

V. A variance is claimed between the pleading and the proof because the proof shows that there was an embezzlement of the *check* for $3,342.27, and not an embezzlement of the money, the proceeds of the check. Proof of the embezzlement of a check will not sustain a charge of the embezzlement of the money. [State v. Castleton, 255 Mo. l. c. 210.] The appellant cites in this connection the case of State v. Fischer, 249 S. W. l. c. 48, 49. In that case we pointed out that if the defendant had no authority to collect the check, when he collected it he embezzled the check and not the proceeds of the check. But if he had authority to collect the check and collected it and converted the money to his own use, he embezzled the money. In this case the check was made payable to Ross, as Deputy Finance Commissioner. He had a right to collect it in his official capacity and his collection of the money on the check was no crime. The conversion occurred when he obtained the money, diverted it from its proper channel, and applied it to his own use. Therefore, he embezzled the money and not the check.

It is a plain case, the defendant's guilt was established by sufficient proof, and we find no error in the record.

The judgment accordingly is affirmed.

All concur.