THE STATE, Appellant, v. FRANK BECKER
et al.

**Division Two, March 12, 1913.**

1. **ESTABLISHING LOTTERY: Indictment: Content of Term
"Lottery."** An indictment is not duplicitous which alleges that
defendants established "a certain lottery and scheme of draw-
ing, in the nature of a lottery," etc.  As now defined the term
"lottery" includes every scheme which could be punished under
the description "scheme in the nature of a lottery."

2. ———: **Aiding and Assisting: Indictment: Name of Those
Aided.** Where defendants were indicted for the specific statu-
tory offense of aiding and assisting in making and establishing
a lottery, the inclusion in the indictment of the names of the
persons aided was not necessary to its validity.

3. ———: ———: ———: **Name of the Lottery.** An indict-
ment for establishing a lottery is not duplicitous because it
charges that the lottery and scheme of drawing established is
"known as the Old Reliable Company and the Standard Invest-
ment Company."  Whether they are names of the same scheme
or names for parts of it makes no difference, if, as this indict-
ment charges when correctly interpreted, they are names apply-
ing to the same thing.

4. ———: ———: ———: **Pleading Evidence.** Section 4770,
R. S. 1909, rendering the establishing or aiding to establish
a lottery a felony, sufficiently individuates the offense it. defines,
and indictments following its language are sufficient.  It is un-
necessary to plead the evidence by which the indictment is to
be supported.

5. ———: ———: ———: **Time of Drawing.** An allegation
in an indictment for establishing a lottery, that certain sums
of money "were thereafter to be disposed of by lot and chance,"
is not bad for repugnancy or absurdity.  The language of Sec.
4770 justifies the conclusion that a drawing in the past is not
an essential to the offense under the statute except as the proof
may show it to be essential to the making or establishing of
the particular lottery, and to that extent it is included in the
simple allegation of- establishing the lottery.

Appeal from St. Louis City Circuit Court.—*Hon.
George C. Hitchcock,* Judge.

REVERSED AND REMANDED (*with directions*).

*Elliott W. Major,* Attorney-General, and *Campbell Cummings,* Assistant Attorney-General, for the State.

(1)   Section 4770, R. S. 1909, sufficiently individuates the offense, and so the indictment, in all its three counts, properly follows the language of the statute. It is not necessary that it should define a lottery, etc., or allege in what manner it was made or established. State v. Miller, 190 Mo. 449; State v. Cronin, 189 Mo. 663; State v. Wilkerson, 170 Mo. 184; State v. Kaub, 90 Mo. 197; Kansas City v. Kahner, 73 Mo. App. 396; State v. Edgen, 181 Mo. 582; 25 Cyc. 1648.   (2)   It is entirely unnecessary for the indictment to aver or charge the manner in which the lottery, or scheme of drawing in the nature of a lottery, was established (except as a business or avocation), or who was to distribute the money or prizes, or for it to set forth the number and value of the prizes, or that any lottery was actually drawn.   State v. Edgen, 181 Mo. 582; State v. Hindman, 4 Mo. App. 582; 25 Cyc. 1649. . (3) To make and establish, or aid in making and establishing a lottery, it is not indispensable and absolutely necessary that there be an actual distribution or disposition, past or present, of the prizes.   If prizes are offered pursuant to the scheme the fact that it is possible that one may or may not win a prize will not prevent the scheme from being a lottery.   The gist of the offense is the element of chance, and the manner of distribution is immaterial.   25 Cyc. 1633, 1640; State v. Perry, 154 N. C. 616; Flemings v. Bills, 3 Ore. 286; Thomas, Nonmailable Matter, sec. 71.   The term "lottery" has no technical meaning in the law distinct from its popular significance.   A lottery is a scheme for the distribution of prizes by chance or the distribution itself when the latter depends upon chance.   5 Words and Phrases, 40425; Commonwealth v. Sullivan, 146 Mass. 142; Holoman v. Estate, 2 Tex.

App. 610; Commonwealth v. Manderfield, 1 Leg. Gaz. R. (Pa.) 37; New Orleans v. Collins, 52 La. Ann. 973. There are three essential ingredients in a lottery— consideration, prize and chance. Equitable L. & S. Co. v. Waring, 117 Ga. 599; State v. Mumford, 73 Mo. 647; United States v. Fulkerson, 74 Fed. 619; United States v. Wallis, 58 Fed. 942; United States v. Olney, 1 Abbot, 275; 27 Fed. Cases, No. 15918; Bishop on Stat. Crimes (2 Ed.), sec. 952, note 2; Hull v. Ruggles, 56 N. Y. 424.

*Charles F. Krone* for respondents.

(1) Each count fails to allege facts sufficient to constitute a crime. (2) Each count fails to inform the defendants of the cause and nature of the accusation; duplicity, ambiguity, repugnancy. (3) Each count fails to state facts constitutive of a lottery or of a scheme of drawing in the nature of a lottery. (4) Each count is duplicitous and ambiguous in that each charges, or attempts to charge, two distinct felonies. State v. Miner, 233 Mo. 132; State v. Huffman, 136 Mo. 51. (5) The first and second counts are void for a repugnance, which renders a charge of crime impossible, in alleging or attempting to allege that defendants made and established, as an avocation and business, on a certain day, or aided in making and establishing, as an avocation and business, on a certain day, a lottery, or a scheme of drawing in the nature of a lottery, whereby money was thereafter to be distributed by lot and by chance. (6) The first and second counts allege no connection on the part of the defendants, between the "making and establishing" of a lottery, at a certain time, and the subsequent disposition of money; "whereby large sums of money were thereafter to be disposed of" is the language, but whether by respondents or others acting with them or independently of them, or by nature or fate, does not appear. Nor are we told to whom the money

was to be "disposed" of. United States v. Goodring, 12 Wheat. 460; Heard, Crim. Pleadings, 167. (7) The second and third counts charge respondents with aiding and assisting, but fail to charge this according to the facts, for they fail to say who it was that they aided or assisted, or that the person aided or assisted is to the grand jury unknown. They might be indicted as principals and convicted as accessories, but where they are charged as accessories, the charge must be according to the facts. Here they are charged as accessories, without principals. Kelley, Crim. Law, sec. 51, p. 39; State v. Taylor, 21 Mo. 480; State v. Slacy, 103 Mo. 111; State v. Noeninger, 108 Mo. 166; State v. Herman, 117 Mo. 629; State v. Schuchmann, 133 Mo. 115; State v. Hopper, 71 Mo. 427.; Comm. v. Glover, 111 Mass. 395; Comm. v. Adams, 127 Mass. 15; People v. Coyodo, 40 Cam. 586. (8) The third count represents the extreme of abstraction in pleading, which falls short in every respect of stating an offense, contains the vices of duplicity and ambiguity which mark the first and second counts and their other defects, except the repugnancy pointed out in the fifth paragraph above. Bishop, Directions and Forms, chap. 53, secs. 672, and 676, note 5.

BLAIR, C.—This case is here on the State's appeal from a judgment of the circuit court of the city of St. Louis sustaining a demurrer to an indictment containing three counts, the first of which (omitting formal parts) charged that defendants, on a day stated, "did knowingly, wilfully and feloniously, make and establish as a business and avocation, in the city and State aforesaid, a certain lottery and scheme of drawing, in the nature of a lottery, known as the Old Reliable Company and the Standard Investment Company, whereby large sums of money, to-wit, ten thousand dollars and divers other sums, were thereafter to be disposed of by lot and chance, the particular

method by which said disposition of said sums of money was to be made, being to these grand jurors unknown; against," etc.

The second count is identical with, the first except it charged defendants "did aid and assist in making and establishing," etc., instead of charging they "did make and establish," etc.

The third count is identical with the second except it omits the charge that money was to be disposed of by lot and chance and omits the statement as to the grand jurors' lack of knowledge as to the method to be employed.

The grounds of demurrer are that neither count states facts sufficient to constitute an offense; that neither count apprises defendants of the nature and cause of the accusation against them; that all the counts are bad by reason of duplicity and repugnancy; that neither count charges the commission of a crime, but merely an intent to commit a crime in the future and that all the counts are "uncertain, vague, indefinite, repugnant and duplicitous . . . and could not be pleaded in bar of any future prosecution."

The indictment follows closely, almost literally, approved forms (State v. Miller, 190 Mo. 1. c. 451, 452), but it is suggested new questions are presented by the demurrer in the instant case and, further, that in one particular the indictment differs from that heretofore approved.

I.   It is argued with much force that duplicity appears from the charge that defendants made and established "a lottery *and* scheme of drawing in the nature of. a lottery." It is contended

**Lotteries: Indictment.**

that the term "lottery" and the phrase "scheme of drawing in the nature of a lottery" relate to things so different that the employment of both in the same count constitutes duplicity. The statute is leveled against any person who shall

"make or establish, or aid or assist in making or es-
tablishing any lottery, gift enterprise, policy or scheme
of drawing in the nature of a lottery, as a business or
avocation in this State. . . ." It is not denied
that the term "lottery" is, as interpreted by the
courts of other States, broad enough to include every
punishable plan, scheme or device whereby anything of
value is disposed of by lot or chance, and it is not
contended there yet has been devised nor that there
could be devised any scheme in the nature of a lot-
tery that the term lottery is not, as thus interpreted,
broad enough to cover. It is said, however, the fram-
ers of the Constitution and the statute must have had
a less comprehensive meaning in mind, otherwise they
are convicted of employing useless words, a conclu-
sion not favored. It is to be observed, however, that
at the time the Constitution was framed the meaning
of the term "lottery" was not so well settled as now
and there was even then a contention being made in
our courts that there was a distinction between a "reg-
ular" lottery and other devices similar in respect to
the elements which rendered them culpable, but not
conducted with the same formalities. [State v. Hind-
man, 4 Mo. App. l. c. 582.] Doubtless to meet such a
conception the framers of the Constitution (Sec. 10,
art. 14) used the phrase "scheme in the nature of a
lottery." The courts of this State had not then given
to the word "lottery" the broad definition (State v.
Mumford, 73 Mo. 647) subsequently approved and it
seems caution rather than necessity dictated the em-
ployment of the additional words "scheme in the na-
ture of a lottery."

In State v. Willis, 78 Me. l. c. 72, 73, in discussing
an indictment charging that defendant was engaged
"in a lottery, scheme or device of chance" the court
said: "The word lottery has no technical meaning.
A lottery is nothing more or less than a scheme or
device of chance." As now defined in this State and

elsewhere we think the term "lottery" includes every scheme which could be punished under the description "scheme in the nature of a lottery" and that, consequently, the use of this further phrase in the indictment does not invalidate it. Certainly as to the first two counts there is no duplicity, since there is added in each a description of the purposes of the device which clearly characterizes it as a lottery.

II. It is contended the second and third counts should have named the persons aided and assisted, and the failure to do so warranted the trial court's action **Names.** in sustaining the demurrer as to them. That this court has entertained a contrary view is evidenced by its approval of indictments like this, and by its view, heretofore announced (State v. Wilkerson, 170 Mo. 1. c. 193), that there is no more effective way to assist in making and establishing a business as a vocation "than to *participate* in it and devote one's time and services in so doing." Three are here jointly charged with aiding and assisting. All three are charged, therefore, with "participating in it and devoting their time and services to it," i. e., with aiding and assisting each other. These counts of the indictment might well be said, therefore, to name each defendant as aiding the others. It is unnecessary, however, to resort to this argument to uphold them. The defendants are not indicted as accessories, but for the specific statutory offense of aiding and assisting in making and establishing a lottery. It is "but another mode of committing or participating in the offense" (Miller v. Com., 76 Ky. 1. c. 736) and is sufficiently charged in the statutory words. [State v. Bush, 70 Kan. 1. c. 740.]

III. It is insisted duplicity conclusively appears from the fact each count charges that the lottery and

248 Mo.—36

scheme of drawing is "known as the Old Reliable Company and the Standard Investment Company." This part of the charge amounts only to an allegation that the scheme bore two names. Whether they are names of the same scheme or names for parts of it makes no difference if, as each count charges, when correctly interpreted, they are names applying to the same thing. There is no duplicity, in this respect, on the face of the indictment.

IV. It has so frequently been held that this section of the statute (Sec. 4770, R. S. 1909) sufficiently individuates the offense it defines and that indictments following its language are sufficient, that it is unnecessary to discuss the argument in support of a contrary view. The statute denounces and the indictment charges the making and establishing of a lottery as a business or (*sic*) avocation. The term lottery has a well known meaning and definition which, substituted in the indictment for the word itself, would leave little room for the contention mentioned. The statute was designed to suppress the business and vocation of those who, by lottery schemes, preyed upon the credulity of the unwary. Each count charges defendants were engaged in such business and is sufficient to advise them of the nature and character of the accusation against them, as the authorities cited in the briefs fully disclose. It is unnecessary to plead the evidence by which the indictment is to be supported. [Com. v. Harris, 95 Mass. l. c. 539.]

*Pleading evidence.*

V. It is contended the allegation, in each of counts 1 and 2, that certain sums of money "were thereafter to be disposed of by lot and chance" are repugnant and absurd and, further, do not connect defendants, by alleged act or intent, with the future disposition of money.

*Drawing.*

In this respect, also, the indictment is like that

in State v. Miller, supra. The statute condemns all lotteries, etc., made or established "as a business or avocation" without regard to whether drawings have been had, and this court, as counsel concedes, seems once to have passed on this point (State v. Pomeroy, 130 Mo. 1. c. 496) adversely to the present contention. Whether what is there said is to be taken as intended to mean solely that it was not necessary for drawings to occur in this State, thus limiting it to the facts in that case, is not important since the language of the statute justifies the conclusion that a drawing in the past is not an essential to the offense under the statute except as the proof may show it to be essential to the *making or establishing* of the particular lottery established and to that extent it is included in the simple allegation of establishing the lottery. It is certainly conceivable that a lottery may be established prior to any actual drawing. [Salomon v. State, 27 Ala. 1. c. 29.] The judgment is reversed and the cause remanded with directions to overrule the demurrer.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All the judges concur.