The State v. Roy T. Myers, Appellant.—49 S. W. (2d) 36.

Division Two, April 8, 1932.

*L. W. Reed* and *John H. Taylor.* for appellant.

*Stratton · Shartel,* Attorney-General, and *Albert Miller,* Assistant Attorney-General, for respondent.

**88**

HENWOOD, J.—By an information filed in the Circuit Court of Scotland County, the defendant was charged (under Sec. 4116, R. S. 1929) with receiving a deposit of $402 in the Citizens Trust Company of Gorin as treasurer thereof and with knowledge that the trust company was then insolvent. The venue was changed to the Circuit Court of Adair County, where an amended information was filed and where he was, thereafter, twice tried and convicted. At the first trial his punishment was fixed at imprisonment in the penitentiary for five years, and on appeal the judgment was reversed and the cause remanded because of the error of the regular judge of the Circuit Court of Adair County in overruling the defendant's application for the substitution of another judge to try the case, based on the alleged prejudice of said regular judge against the defendant. [State v. Myers, 322 Mo. 48, 14 S. W. (2d) 447.] At the second trial his punishment was fixed at imprisonment in the penitentiary for two years, and he has again appealed in due course. On this appeal it is contended that the trial court erred in overruling the motion to quash the amended information, in overruling the pleas in abatement, in admitting certain evidence offered by the State, in overruling the demurrer to the evidence, and in refusing to give certain instructions requested by the defendant.

I. For reasons which will presently appear we will first consider the defendant's challenge of the sufficiency of the evidence, without undertaking to make a statement of the evidence. The evidence adduced by the State fully warrants the finding that the defendant received the deposit in question, as treasurer, as well as cashier, of the trust company, and fully justifies the conclusion that the defendant knew the financial condition of the trust company, whatever that condition may have been, at the time said deposit was received. But, on the issue of the trust company's insolvency, the State's evidence, as preserved in the record before us, consists of a mass of the trust company's papers, documents and records and a mass of oral testimony relating thereto, and the testimony relating to said papers, documents and records is so confusing, indefinite

and uncertain, and so commingled with objections and harangues of counsel and exchanges of remarks between counsel, that we are unable, after a painstaking effort, to make an intelligent statement of said evidence or to form an intelligent opinion as to whether or not it is sufficient to support the finding of the jury on said issue. ■ If said evidence, in typewritten form, is unintelligible to us, it must have been unintelligible to the jury, who merely heard it as it was presented before them, in the midst of constant interruptions, and who had to rely solely on their memories in determining its meaning and significance. Confronted with such a situation, we are compelled to reverse the judgment and remand the cause. [See our rulings in State v. Hancock, 320 Mo. 327, 7 S. W. (2d) 273; Johnston v. Johnston, 16 S. W. (2d) 91; Denny v. Guyton, 327 Mo. 1030, 40 S. W. (2d) l. c. 591.]

■ II. The defendant moved to quash the amended information on the ground that the Prosecuting Attorney of Scotland County was without authority to amend the original information after the cause was transferred to the Circuit Court of Adair County. The case of State v. Bartlett, 170 Mo. 658, 71 S. W. 148, relied on by the defendant, was expressly overruled in State v. Dixon, 253 S. W. 746, wherein it was said: "A change of venue is awarded to a defendant as a privilege when it appears he cannot have a fair and impartial trial in the county where the crime is charged to have been committed. It would be anomalous to contend that, by taking a change of venue, the defendant could deprive the State of the right of amendment, and thus defeat a prosecution because of a defect in an information that is unqualifiedly amendable under the statute." [See Statute of Jeofails, Sec. 3508, R. S. 1929; see, also, Secs. 3640, 3641 and 11316, R. S. 1929.] The ruling in the Dixon case has been strictly adhered to in all subsequent rulings of this court on this question. [See State v. Rennison, 306 Mo. 473, 267 S. W. 850; State v. Tippett, 317 Mo. 319, 296 S. W. 132; State v. Lomax, 322 Mo. 86, 14 S. W. (2d) 436; State v. Ferris, 322 Mo. 1, 16 S. W. (2d) 96.] It follows that the motion to quash the amended information was properly overruled.

III. The defendant's pleas in abatement, omitting the captions, signatures and supporting affidavits, read as follows:
"First Plea.
"Now comes Roy T. Myers, defendant in above entitled cause, who is informed against by the Prosecuting Attorney of Scotland County, Missouri, for the crime of having received deposits as the treasurer of the Citizens Trust Company of Gorin, Missouri, know-

ing the same to be insolvent, and having seen and heard said information read, says that he is entitled to discharge from the said information, for the reasons following:

"That long prior to the filing of any information or the finding of any indictment against defendant in relation to the conduct and management of the Citizens Trust Company of Gorin, Missouri, one Frank C. Millspaugh, then Commissioner of Finance of the State of Missouri, was being investigated by the legal authorities in said state for alleged misconduct in relation to his office and the said Citizens Trust Company.

"That at the time alleged in the information herein and long prior thereto and thereafter Robert W. Otto was the duly elected, qualified and acting Attorney-General of the State of Missouri, and as such officer had the power and authority to conduct examinations before grand juries and to sign informations and indictments; that the said Robert W. Otto, Attorney-General as aforesaid, was specifically directed and empowered under and by virtue of the laws of the State of Missouri to assist the several prosecuting attorneys of the State in all matters necessary to a complete examination and investigation of the conduct and management of the said Citizens Trust Company of Gorin, Missouri, and of the Commissioner of Finance, the said Frank C. Millspaugh, in reference thereto; that by virtue of the power conferred upon him by the laws of the State and by the direction of the Governor thereof, the said Robert W. Otto, Attorney-General as aforesaid, had the right, power and authority, and it was his duty to examine into the affairs of said Citizens Trust Company of Gorin and of the State Finance Department and its officers in relation thereto, and to institute and conduct such prosecutions in relation thereto as to him, the said Attorney-General seemed proper; that the said Attorney-General in the investigation of the matters and things aforesaid became of the opinion that the said Frank C. Millspaugh, Commissioner of Finance as aforesaid, was guilty of illegal acts and conduct in relation to the affairs of the Citizens Trust Company of Gorin; that the said Robert W. Otto, Attorney-General as aforesaid, was very desirous of obtaining evidence against said Millspaugh upon which to base a prosecution; that he, the said Otto, told one Glenn C. Bruner, an attorney-at-law of Kansas City, Missouri, that if Roy T. Myers, defendant herein, would make a full, true and complete statement of the affairs of said Citizens Trust Company of Gorin and of the acts and conduct of the said Frank C. Millspaugh, Commissioner of Finance as aforesaid, in relation thereto, he, the said Robert W. Otto, Attorney-General as aforesaid, would grant defendant herein full immunity from any and all charges which might be made against him or which could or might arise in any way by reason

of defendant's connection with said Citizens Trust Company of Gorin; that these statements and promises of the Attorney-General were conveyed by the said Bruner to the attorney for defendant and by said attorney to defendant; that the said Robert W. Otto repeated the aforesaid promises of immunity to Curtis Betts of the St. Louis Post Dispatch, to Orville Myers, brother of defendant, and to L. W. Reed, attorney for defendant and to others; that, relying upon the promises and representations of the Attorney-General aforesaid, L. W. Reed, attorney of defendant aforesaid, and Orville Myers, brother of defendant aforesaid, accompanied by the said Robert W. Otto, Attorney-General as aforesaid, and ·Curtis Betts, went to El Paso, Texas, and caused defendant to meet them there; that there the said Otto informed defendant, in the presence of the other parties herein named, that he was the Attorney-General of the State and authorized by the Governor thereof to take charge of and conduct examinations of all matters in relation to the management of the affairs of the Citizens Trust Company of Gorin and of the conduct of the State Finance Department and its officers in relation thereto; that he, the said Otto, very much desired evidence which would justify a prosecution of the said Millspaugh; that· Millspaugh was the man he was after; that the said Otto, representing the State of Missouri as its chief and highest legal authority and backed by and acting under the express authority of the State's Chief Executive Officer and empowered by virtue of his office to pledge the faith of the State in matters in which the State is a party, solemnly promised this defendant that if he, defendant, would make a full, frank and truthful statement of the condition of said Citizens Trust Company at the time of and prior to its failure and of the acts and conduct of said Millspaugh as Commissioner of Finance in relation thereto, he, the said Otto, would grant defendant full immunity from any and all prosecutions on any charges which might or could be made against defendant by reason of his connection in any way with said Citizens Trust Company; that defendant, relying upon the promises of the said Otto, answered fully and truthfully all questions propounded to him by said Otto relating to the affairs of the Citizens Trust Company and said Millspaugh's connection therewith; that thereafter the said Otto was desirous of questioning defendant further on some matters which he, Otto, had overlooked in his first examination and by telegraph, telephone and letter urged defendant to meet him at Wichita, Kansas. Defendant went to Wichita as requested and was there notified by said Otto to appear at Tulsa, Oklahoma, and in obedience to that request defendant went to Tulsa, where he was met by W. L. Vandeventer, First Assistant Attorney-General of Missouri, who informed defendant that he was acting for said Otto and that the

said Otto desired further information concerning the matters hereinbefore mentioned, and defendant still believing and relying upon the representations and promises made by the said Otto as aforesaid and believing in his power and authority to make such representations and promises, answered fully and truthfully all questions propounded to him by the said Vandeventer; that at the suggestion of said Otto defendant then went to Kansas City, Kansas, and was told by the said Otto to remain out of the State until further advice from him, the said Otto; that thereafter, using the information and facts obtained by him from defendant as aforesaid, he, the said Otto, as Attorney-General as aforesaid, caused the said Millspaugh to be indicted by the Grand Jury of Scotland County, Missouri; that the information so obtained as aforesaid from defendant was presented by the said Otto to the Governor of the State and by reason thereof the said Millspaugh was by the said Governor removed from office.

. "Defendant faithfully carried out and performed his part of the agreement between the Attorney-General and himself, but the said Attorney-General, notwithstanding his representations and promises so made as aforesaid, has failed, neglected and refused to grant immunity or cause the same to be granted to defendant as under the power and authority of his office he had the right to do. That by the terms of the agreement so made as aforesaid and which have been kept and performed on the part of the defendant, the faith of the State is pledged to dismiss this prosecution and discharge of defendant; that in violation of said agreement on the part of the State the defendant is now being forced to defend against the charges contained in this information, and the said Roy T. Myers is ready to verify and prays that said information may be quashed and defendant discharged."

"Second Plea.

"Now comes Roy T. Myers, defendant in above entitled cause, who is informed against by the Prosecuting Attorney of Scotland County, Missouri, and having heard the amended information read, says that he is entitled to his discharge from the amended information for the reasons following:

"That by virtue of a subpoena duly issued by the Clerk of the Circuit Court of Jackson County, Missouri, and duly served upon him defendant was compelled to and did appear before the Grand Jury of Jackson County, Missouri, at the City of Kansas City at the March Term, 1925, of said Circuit Court as a witness to testify before said Grand Jury; that said Grand Jury at said term had before it for investigation certain charges against one F. C. Millspaugh, Director of Finance of the State of Missouri, for violation

of the laws of the State in the management of the affairs of his office and particularly in connection with the affairs of the Citizens Trust Company of Gorin; the original information and the amended information in this case charges defendant with having received a deposit in said Trust Company knowing the same to be insolvent; that defendant herein in obedience to the command of said subpoena appeared before said Grand Jury and was sworn as a witness to testify in relation to said charges on the 5th day of May, 1925; that long prior to said last mentioned date Robert W. Otto, Attorney-General of the State of Missouri, had entered into an agreement with the defendant that if he, the defendant, would make a statement to said Otto as to Millspaugh's handling of said Trust Company as Director of Finance and turn over to said Otto certain letters, papers and documents in reference thereto, then he, the said Otto, by virtue of the power vested in him as Attorney-General of the State, and by the authority given him by the Governor of the State, would grant to defendant full immunity from prosecution on account of any acts of defendant in relation to the management of said Trust Company; that defendant made the statement to the Attorney-General as requested and turned over to him said letters, papers and documents, relying upon the promise of immunity so made to him by the Attorney-General as aforesaid; that, at the time defendant appeared before said Grand Jury as aforesaid, the said letters, papers and documents were in the possession of the Grand Jury; that the defendant, not knowing that he, himself, was under investigation, not being informed as to his constitutional rights and relying upon the promises of the Attorney-General that he was not to be prosecuted, answered fully the questions propounded to him by the Grand Jury as to his, defendant's management of the Citizens Trust Company, the methods used by him in loaning the funds of same and in receiving deposits therein; that said letters, papers and documents were shown to him and he was questioned at length in relation thereto; that thereafter the Prosecuting Attorney of Scotland County filed an information against defendant in the Circuit Court of Scotland County charging defendant with receiving a deposit in said Trust Company knowing the same to be insolvent; that said information and the amended information thereafter filed were and are based on the facts obtained in said Jackson County Grand Jury investigation and from the letters, papers and documents so obtained by the Attorney-General as aforesaid and upon which defendant was questioned by said Grand Jury; that before the filing of the information aforesaid the facts contained in the testimony of defendant before the Grand Jury aforesaid and in the letters, papers and documents aforesaid

were communicated by the Attorney-General to the Prosecuting Attorney of Scotland County.

"To the facts hereinabove set forth the said Roy T. Myers is ready to verify and prays that said information may be quashed and defendant discharged."

The evidence offered by the defendant in connection with the pleas in abatement fully sustains all of the allegations in said pleas, except the allegation in the second plea that the information in this cause was based on the testimony given by the defendant before a grand jury of Jackson County. The State offered no evidence in opposition to the pleas in abatement.

█ It seems unfortunate, to say the least, that this prosecution arose out of an investigation in which the defendant furnished valuable information and rendered valuable assistance to the State under a promise of immunity from prosecution by the Attorney-General of the State. Be that as it may, said promise of immunity from prosecution by the Attorney-General is not binding on the State and constitutes no bar to this prosecution. [See State v. Guild, 149 Mo. 370, 50 S. W. 909, and authorities cited.] And, while the defendant appeared before a grand jury of Jackson County in response to a subpoena, there is no showing that his acts as an officer of the Citizens Trust Copany of Gorin were under investigation by said grand jury or that the Prosecuting Attorney of Scotland County was ever advised of the testimony given by him before said grand jury. Moreover, said testimony of the defendant relates only to information which he had previously given to the Attorney-General under said promise of immunity from prosecution and which the Attorney-General conveyed to the Prosecuting Attorney of Scotland County. █ So, it will not do to say that the information in this cause was based on the testimony given by the defendant before said grand jury, or that the defendant has been compelled to testify against himself, within the meaning of Amendment V of the Constitution of the United States or Section 23 of Article II of the Constitution of Missouri. [See our rulings in State v. Erlbacher, 270 S. W. 277, and in the separate concurring opinion of Judge BLAIR in State v. Pearson, 270 S. W. l. c. 352.] The pleas in abatement were properly overruled.

IV. In view of the disposition to be made of this case on this appeal, we need not discuss in detail the complaints of the defendant relating to the admission of certain parts of the State's evidence. It will suffice to say that we find no substantial merit in any of said complaints.

 V. No error was committed by the trial court in refusing to give the defendant's instructions 6, 8, 10, 12, 14 and 17, the subject-matter of said refused instructions being fully covered by other instructions which were given. [State v. Emma, 324 Mo. 1216, 26 S. W. (2d) 781.]

For the reason hereinabove stated, the judgment is reversed and the cause remanded. All concur.